## Charles B. Wilkinson *v.* Henry T. Suplee and Elizabeth Suplee, Appellants.

*Contract—Use of street—Equity—Fraud—Evidence.*

Plaintiff and defendants, who were all the parties entitled to the use of a private street, agreed to close up and vacate the street. Defendants, in consideration of plaintiff joining in the agreement, and for the mutual use and accommodation of all the parties to the agreement, agreed to lay out two streets on their own land. One of the streets was described as running to the line of ground of plaintiff. Defendants executed a deed of dedication of the streets to the city. The streets were at right angles with each other, and one of them projected beyond the other for a distance sufficient to reach plaintiff's line, forming a cul de sac. This blind end of the street was not placed upon the city's plans. Defendants erected a fence at the intersection of the street, cutting off the blind end, and depriving plaintiff of an exit from his property through the blind end of the

street.   On a bill in equity to compel the removal of the fence, the master found that no fraud had been practiced upon defendants by plaintiff, although plaintiff drew the agreement and was at the time the attorney and agent of the defendants.   *Held* that under the agreement plaintiff had a right to the use of the blind end of the street.

Argued January 25, 1895.   Appeal, No. 195, July T., 1894, by defendants, from decree of C. P. No. 2, Phila. Co., June T., 1893, No. 152, in favor of plaintiff on bill in equity.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity to restrain construction of fence, and obstruction of private street.

The case was referred to Robert Alexander, Esq., as master, who reported as follows:

" The complainant obtained title to a large tract of land by two deeds, one dated Oct. 5, 1883, and the other dated Feb. 2, 1884, both deeds being duly recorded.   The complainant conveyed a part of said large tract to John Bozorth by deed dated July 24, 1884, and also conveyed another part of said large tract to John Bozorth by deed dated Oct. 8, 1883.   The complainant conveyed to Henry T. Suplee a part of said large tract of land by deed dated May 25, 1887, reserving thereout a yearly ground-rent of $660.

" Bicking street was laid out by the complainant prior to the conveyances to John Bozorth, who acquired by said conveyances the free use, right, liberty, and privilege of Bicking street at all times forever, and the conveyance to Henry T. Suplee as referred to above, carried with it the soil or bed of said Bicking street, subject to the rights granted to said John Bozorth, his heirs and assigns in said street.

" The premises conveyed by complainant to Henry T. Suplee were subsequently, by divers conveyances, conveyed unto Elizabeth Suplee, wife of Henry T. Suplee.

" On July 26, 1887, an agreement in writing, duly recorded, was entered into between the complainant and his wife of the first part and John Bozorth of the second part, and Henry T. Suplee and Elizabeth, his wife, of the third part, a copy of which agreement is hereto attached.   This agreement recites that the complainant had laid out and opened a certain street

called Bicking street, and that he had conveyed to John Bozorth two tracts of land with the right to use Bicking street, and that he had granted to Henry T. Suplee a tract together with the bed of Bicking street, subject to the right of John Bozorth, his heirs and assigns, etc., to use Bicking street, and had reserved out of the latter tract the ground-rent of $660, and that Elizabeth Suplee had become the owner in fee, subject aforesaid as to the latter tract, and that the three parties to said agreement were all persons entitled to the use of said Bicking street.    That in consideration of the premises and the sum of one dollar, each to the other paid, they agreed to waive and quitclaim all right, use and privilege of Bicking street, and that the same should be vacated and closed up, and that Henry T. Suplee and Elizabeth, his wife, for the aforesaid consideration, with the consent of the other parties, had agreed to lay out and open, for the mutual use and accommodation of all parties to the agreement, their heirs and assigns, two certain streets, known as Yocum street and Lincoln square.    And the agreement further provided as follows :

" ' And the said Henry T. Suplee and Elizabeth, his wife, do hereby grant and convey unto the said parties of the first and second parts, their heirs and assigns, the free use, right, liberty and privilege of the said Yocum street and Lincoln square, as and for streets, passage-ways and water courses, in common with them, the said Henry T. Suplee and Elizabeth, his wife, and their heirs and assigns, owners, tenants and occupiers of the ground bounding thereon, at all times hereafter forever.'

" In the said agreement the exact location and width of said streets, and the length thereof, is particularly mentioned, and the said Lincoln square is described as ' running to line of ground of said Charles Benjamin Wilkinson.'    This agreement was entered of record May 28, 1888.

" On April 20, 1888, Henry T. Suplee and wife made a deed of dedication to the city of Philadelphia in the usual form, of the strip of ground located and described in the agreement aforesaid, ' to and for the only proper use and behoof of the said city of Philadelphia, its successors and assigns forever, for a public street or highway.'    This deed of dedication was approved by the city solicitor, and was accepted by the board of surveyors, Oct. 5, 1888, and recorded Nov. 30, 1888.

"Bicking street as laid out did not touch the property of the complainant, nor does Yocum street touch the property of the complainant. According to the uncontradicted testimony, Henry T. Suplee, acting as the agent for Elizabeth Suplee, his wife, before he began the erection of the houses, changed the plan of laying out the ground, in order to better adapt it to building purposes, and he prepared a plan which was submitted to Mr. Jones, a surveyor, who afterwards prepared the plan finally adopted.

"Mr. Suplee was advised by the complainant, who was then acting as his counsel and conveyancer, that it would be necessary, in order to make the change in the streets, to have the consent of all parties who subsequently signed the agreement above referred to.

"The complainant, or the firm of Wilkinson & Brother, of which the complainant was a member, prepared the agreement in question and also the deed of dedication.

"The city of Philadelphia placed upon the confirmed plan of the city said Yocum street of its entire length, and Lincoln square from Greenway avenue to the lower side of Yocum street, but the blind end of Lincoln square from Yocum street to the line of the rear end of complainant's property has never been put upon the city plan.

"Mrs. Suplee built houses on both sides of Lincoln square and some houses upon Yocum street. Two brick houses were built on the east side of Lincoln square, south of Yocum street. There is a house at the corner of Yocum street and Lincoln square, fronting on Yocum street and extending back toward the complainant's ground, leaving a space however, on the west side of Lincoln square, sufficiently large to permit of the erection of a house fronting on Lincoln square. The only land of the complainant which abuts on Lincoln square is about ten feet of the rear of complainant's lot, and at the west side of the square.

"A water pipe was laid by the city in Lincoln square, extending its entire length, and a plug was placed by the city on the east side of the street close to the south end of the said street, on that portion not on the city plan.

"At the time Lincoln square was laid out a fence already existed across the rear end of the complainant's lot, separating

it from Lincoln square. After the houses were built on Lincoln square, by Mrs. Suplee, and about a month before the filing of the bill, she caused another fence to be put across the blind end of the square. Lincoln square has the usual curb and sidewalk on both sides of the street, extending to the extreme blind end. Without driving upon the sidewalk there is not sufficient room for a wagon to pass from the rear of the complainant's lot to Lincoln square.

" The complainant produced a number of water-pipe bills for pipe laid in Lincoln square. The receipts are in the name of Elizabeth Suplee. Lincoln square was at one time called Hansom street.

" The purpose of dedicating Lincoln square, according to the testimony of the complainant, was to enable Mrs. Suplee to obtain water-pipe. This, however, Mr. Suplee denies and says he could have obtained water-pipe without dedication.

" The fence which the complainant tore down, is the fence which was constructed by Mrs. Suplee. This fence, it is alleged, Mrs. Suplee proposes to restore. It is the purpose of the bill in question, to prevent the reconstruction of this fence and to prevent any obstruction on the part of the Suplees, with the free use of Lincoln square by the complainant.

" [The allegation in the answer of respondents filed, that if the agreement of July 26, 1887, conveyed to complainant the right to use Lincoln square, the agreement was obtained by fraud by the complainant concealing the true intent and meaning of the contract from respondents, is not supported by the evidence, and the master finds that there was no fraud and no concealment in the matter.] [1–4]

" FINDINGS OF LAW.

" The act of June 6, 1871, § 3, P. L. 1355, provides: ' No street shall hereafter be added to any confirmed plan of the city of Philadelphia and called a public street, until the same shall have been approved by the board of surveyors as to location, width and grades, and shall extend from street to street as a thoroughfare.' So much of Lincoln square therefore as extends southward from Yocum street cannot for the present be placed upon the city plan without violating the act of assembly. There has, however, been a legal dedication to the public

and a legal acceptance by the city of the strip of land called Lincoln square as far as the southerly side of Yocum street. The approval of the city solicitor of the deed as to form for the entire strip of land called Lincoln square, and the acceptance of the deed of dedication by the board of surveyors, and the entry of the city upon that land for the purpose of laying down water-pipe, would be construed as an acceptance of the dedication by the city of said land throughout its entire length for a public highway were it not for the act of 1871 above referred to :  City v. Thomas, 152 Pa. 494.

" The question here is not what rights have the public at large in the ground called Lincoln square, south of the south line of Yocum street, but what rights has the complainant.   That the respondents did by a deed duly recorded grant to the complainant, as a part of the public, the right to use said strip of land for all purposes for which a street is generally used, and that the respondents did by a duly recorded agreement, also grant to complainant the right to use said ground for a street, passageway and watercourse, are facts found by the master. [So long as the grant in this deed remains unrevoked, and the written contract remains in force, it seems to the master that the complainant has, without regard to the general public, rights and easements in the land which the respondents cannot ignore.] [5]

" It is contended by the counsel for the respondents that, inasmuch as the blind end of Lincoln square was not legally accepted by the city, it is within the power of the grantor to revoke the dedication of so much of the land as has not been accepted, and he has cited authorities from other states to support this contention.   While this may be true in some states, it is by no means clear that it is the law in Pennsylvania.   Thus in Patterson v. Harlan, 124 Pa. 67, Chief Justice PAXSON says : ' We need not discuss the question how far the deed was a dedication of the street to public use, nor the extent to which such dedication would be effective without an acceptance on the part of the municipal authorities.   It is sufficient to say that there was a dedication of the street to the use of the grantees, and neither the grantor, nor those claiming under him, can now be allowed to repudiate such dedication.'

" Even if the respondents could revoke the dedication, so

far as the public are concerned, on the theory that no legal rights have before acceptance of dedication been acquired by the public, it does not follow that the grant to the respondents in the written contract can be revoked.  If so, any written contract can be destroyed to suit the convenience or pleasure of a dissatisfied party.

" Counsel for respondents contend that they joined in the agreement only at the request and upon the advice of the complainant, who acted as counsel for them; that it was never the intention of the respondents to grant any permanent easements to complainant in Lincoln square, and that they signed the agreement without understanding its legal effect.  So far as the master understands the testimony [the respondents were not deceived by the concealment of any fact, nor were they wrongly advised or overreached; on the contrary, all the parties seem to have acted in good faith and with a perfect understanding of what they were doing.] [6]  If the respondents were willing to grant to complainant the use of Lincoln square in consideration of the complainant and of Bozorth relinquishing their rights in Bicking street, and enabling the respondents to open Yocum street and Lincoln square, there seems to be no good reason why the master should inquire into the value of the consideration passing between the parties.  The consideration was considered by the parties at the time as adequate. [The contract, so far as the evidence shows, was clearly understood and the intent was clearly expressed.  The rights which the complainant acquired thereunder have not been forfeited or lost in any manner, and there is no reason why the rights so acquired should not be enforced and maintained.] [7]

" In the opinion of the master [the complainant has a right, in common with the public at large, under the deed of dedication, to use so much of that strip of ground called Lincoln square as extends from the southerly line of Yocum street to Greenway avenue as a public highway, and he has right under the contract of July 26, 1887, and also under the deed of dedication, to use the blind end of said Lincoln square from the southerly side of Yocum street to the northerly line of the complainant's lot, which fronts on Woodland avenue, for all the purposes mentioned in the deed of dedication and in the said contract, and respondents have no right to construct or

maintain a fence or other obstruction interfering with such use.] [8]

" As the material facts in this case are not in dispute and the contention is really upon the construction and effect of written documents, the authorities cited by the respondents, that no injunction can issue until the rights of the parties are established in an action of law, are not to the point.

" The complainant is entitled to the relief prayed for."

Exceptions to the master's report were overruled, and a decree entered in favor of plaintiff.

*Errors assigned* were (1–9) overruling exceptions and entry of decree, quoting them.

*Edwin O. Michener,* for appellants, cited: Trerice v. Barteau, 54 Wis. 99; People v. Lochfelm, 2 Cent. R. 875; Booream v. R. R., 39 N. J. Eq. 465; Cass Co. v. Banks, 44 Mich. 467; Rozell v. Andrews, 8 N. E. R. 513; Rhea v. Forsyth, 37 Pa. 503; Beatty's Alley, 104 Pa. 622; Com. v. Moorehead, 118 Pa. 346; Shellhouse v. State, 2 N. E. R. 484; Gentlemen v. Soule, 83 Am. Dec. 264; Bushnell v. Scott, 21 Wis. 451; Bushnell v. Scott, 94 Am. Dec. 555; Lee v. Lake, 90 Am. Dec. 220; Angell on Highways, 3d ed., c. 3, p. 132; Yost v. Boro., 4 Lanc. 62; City Solicitor's Opinions, 1884, p. 98; Ib. 1886, pp. 30, 31; Act of April 21, 1855, P. L. 264; Arch St., 10 Phila. 117; Twenty-eighth St., 102 Pa. 140; Biddle v. Ash, 2 Ashm. 211; Gowan v. Exchange, 5 W. & S. 141; San Francisco v. Canavan, 42 Cal. 541; Bridges v. Wyckoff, 67 N. Y. 130; Simmons v. Cornell, 1 R. I. 519; Crocket v. Boston, 5 Cush. 182; Baker v. Johnston, 21 Mich. 319; Long v. Battle Creek, 39 Mich. 323; Stone v. Jackson, 32 Eng. L. & Eq. 349; Bowers v. Co., 4 Cush. 332; State v. Trask, 6 Vt. 355; Hall v. McLeod, 2 Metc. (Ky.) 98; Cyr v. Madore, 73 Me. 53; Coal Co. v. Snowden, 42 Pa. 490; Minnig's Ap., 82 Pa. 373; Washburn's Ap., 105 Pa. 483.

*Alfred J. Wilkinson* and *A. Lewis Smith* cited: White v. Smith, 33 Pa. 186; Beeson v. Patterson, 36 Pa. 24; School Dist. v. Derr, 115 Pa. 439; Burkhard v. Ins. Co., 102 Pa. 262; 2 Whart. Cont. § 670; Patterson v. Harlan, 124 Pa. 67; 2

Dil. Mun. Corp., 4th ed. 759; Trustees v. Hoboken, 33 N. J. L. 13; Angell on Highways, § 135; Washburn on Easements, 3d ed., p. 195; Transue v. Sell, 105 Pa. 604; Trutt v. Spotts, 87 Pa. 341; Pearl St., 111 Pa. 565; Hacke v. Hugus, 101 Pa. 245.

OPINION BY MR. CHIEF JUSTICE STERRETT, Feb. 4, 1895:

An examination of this record has satisfied us that there is nothing in any of the sixteen specifications of error that would justify either a reversal or modification of the decree. The learned master's findings of fact are abundantly sustained by the pleadings and proofs; and the decree complained of is the legal sequence of the clearly established facts. The allegation of fraud in procuring the agreement of July 26, 1887, is not sustained by any sufficient evidence. After correctly reciting the facts as to the ownership of different parts of the property, etc., the agreement provides, on behalf of all the parties thereto, for the vacation of Bicking street, and, on behalf of the defendants, for laying out and opening—for the mutual use and accommodation of all the parties thereto—Yocum street and Lincoln square, the latter extending southeastwardly from the southwestwardly side of Greenway avenue to the line of plaintiff's Woodland avenue lot, and then grants and conveys to plaintiff and John Bozorth, their heirs and assigns, the free use and privilege of said Yocum street and Lincoln square, as and for streets, passageways and watercourses, in common with the defendants, their heirs and assigns, owners, tenants and occupiers of the ground bounding thereon, at all times thereafter forever. So far as appears from any evidence in the case, the negotiations leading up to the execution of the agreement and the subsequent deed of dedication, etc., were conducted as such transactions usually are. It is fair to presume that defendants knew the southwestwardly terminus of Lincoln square was partly on the northeastwardly line of plaintiff's Woodland avenue lot. The agreement calls for that line, and there is nothing to show that they were ignorant of the fact. But, whether they knew or not, plaintiff was not bound to explain to them what benefits, if any, might result to him from the agreement. It is enough to know that, so far as he was concerned, evidence

of fraud is not in the case.    It is unnecessary to specially notice either of the specifications.    Neither of them is sustained.

Decree affirmed and appeal dismissed with costs to be paid by appellants.